## NORRIS v. MORRISON.

A widow is entitled to dower and homestead in an equity of redemption in real estate of her late husband against all persons except the mortgagee or those claiming under him.

But she cannot have dower or homestead, as against the mortgagee, except by payment of the whole mortgage debt.

Against any and every one having an interest in the redemption, and who has actually redeemed the mortgage, she can hold her dower and homestead upon payment of contribution.

If the administrator redeems the mortgage from assets of the estate, then the widow takes dower and homestead without contribution.

After the decease of the mortgagor, if the equity of redemption is purchased by the mortgagee, the two estates—that under the mortgage and the equity of redemption—become merged, as though some third person had purchased the equity and then redeemed the mortgage, and in such case the widow may hold her dower and homestead discharged from the mortgage, by paying contribution only.

In such case it is immaterial whether the dower and homestead, or either of them, be first assigned, or the equity be first sold, since the owners of these interests, in either case, stand on the same ground in equity, their separate estates commencing not from the time of assignment or sale, but from the death of the intestate.

Hence, the mortgage debt is to be shared between the owner of the equity of redemption and the widow having dower and homestead, according to the relative value of the proportion of mortgaged property held by each.

IN EQUITY.   Abigail B. Norris, of Manchester, in said county, widow, complains against George W. Morrison of said Manchester, Esquire, and says, that she is the widow of Moses Norris, late of said Manchester, deceased, by whom she had the following children under the age of twenty-one years, to wit, Henry C. Norris and Mary A. Norris; that her said husband died January 11th, 1855, seized of certain real estate situated in said Manchester, bounded and described as follows, to wit: A certain parcel of land bounded on the east by Union street 150 feet, south by land of the heirs of Foster Towns 120 feet, west by a line parallel with the west line of Union street 150 feet, and north by Concord street 120 feet, containing 18,000 square feet; also, the undivided half of a certain other piece of land adjoining the parcel above described, and owned in common with said Morrison, bounded on the north by Concord street 100 feet, east by the parcel above described 150 feet, south by land of the heirs of Foster Towns and by land of Isaac C. Flanders 100 feet, and west by land of said Morrison 150 feet, containing 15,000 square feet:

That, at the time of the death of said Norris and for a long time prior thereto, said real estate was occupied by him and this plaintiff with their minor children as his and their home and dwelling:

That, on the first day of April, 1851, the said deceased mortgaged to the said Morrison, the said real estate to secure the sum of $1750:

That, in June, 1856, this plaintiff presented a petition in writing to the Probate Court for said county, that a homestead of the value of $500 might be set off to her out of said estate, and the petition being denied by the Judge of Probate, this plaintiff appealed to the Supreme Judicial Court, which, at the December term, 1856, reversed the decree of the Probate Court, and decided that this plaintiff was entitled to a homestead to be assigned to her out of said estate, and the case being thereupon remitted to the Probate Court, a homestead was, in December,

1857, assigned and set off to her, together with her dower in said estate, by metes and bounds in the piece of land above described, owned in common with said Morrison, partition of the same having been made between the estate of said deceased and said Morrison by a committee appointed for that purpose, as follows, to wit: to said Morrison a piece from the westerly side thereof, 30 feet wide and 150 feet long, and containing 4500 square feet; also, a piece from the easterly side thereof 20 feet wide and 150 feet long, and containing 3000 square feet, making 7500 square feet in the whole set off to said Morrison; to the estate of said Norris, a piece between the two pieces so set off to said Morrison, 50 feet wide and 150 feet long, and containing 7500 square feet; the pieces so set off to the parties to be held in severalty:

That the dower and homestead so assigned to this plaintiff covered all the 7500 feet set off as aforesaid to said estate, leaving the first piece of 18,000 feet to be applied wholly upon the defendant's mortgage, and which the defendant has been in the possession of ever since, taking the rents and profits thereof, and which was and is abundantly sufficient to pay the mortgage aforesaid:

That said Morrison has been in possession of the 7500 feet of land set off to him as aforesaid, ever since said partition was made:

That, in December, 1856, the administrator of the estate of said deceased obtained license from the Probate Court for said county to sell the whole of the real estate of said deceased, subject to said mortgage, the dower of the widow and the homestead of the widow and minor children:

That, on the second day of June, 1858, after her dower and homestead had been assigned as aforesaid, said administrator sold at public auction, said estate, subject to said mortgage, dower and homestead, for the sum of $100, to this defendant, the said George W. Morrison, who was the purchaser thereof, over and above all the incumbrances upon it, and that since that time all of said land has been in the possession of said Morrison, excepting the dower and homestead aforesaid—and that this plaintiff with her minor children has been in the possession of the premises so assigned to her as her dower and homestead ever since the decease of her said husband, and still is in the possession of the same:

That said deceased in his lifetime made partial payments on said mortgage, leaving due at the time of his decease the sum of $1400, or thereabouts, and that said mortgaged estate was valued at $3500:

That said 1800 feet of land is, and has been, ever since partition of said 1500 feet was made, worth more than enough to pay said mortgage debt, to wit, of the value of $2500, and upwards; that the restriction contained in the deed from the Amoskeag Manufacturing Company, who formerly owned said premises, to their grantee against building more than one dwelling house upon the same, has nearly expired; that the land is increasing in value by reason of the time limited, within which such restriction shall be in force, having nearly expired; that it is situated in the heart of the city of Manchester, and would make very eligible and desirable house lots.

The plaintiff further says that the said Morrison acted as her attorney

in procuring the assignment of her dower and homestead, and while her appeal was pending in the Supreme Judicial Court, and always assured her that she had a home for her life.

The plaintiff further says that said Morrison, on the 18th day of August, 1862, commenced an action against her for recovery of the possession of the piece of land above described, containing 15,000 feet, alleging a seizin of the demanded premises in himself as of fee and in mortgage, and entered said action in the Supreme Judicial Court for said county, at the September trial term thereof 1862, and said action is now pending in said court, and said Morrison is threatening and attempting to recover a judgment against her for the possession of the land so assigned to her as her dower and homestead.

And the plaintiff further says that it would be unjust and inequitable that any portion of the premises set off to her as her dower and homestead should be applied in satisfaction of said mortgage debt, until the said 18,000 feet and the reversion of the dower and homestead have been first applied in satisfaction of the same ; because said mortgage debt has been fully paid and satisfied by the sale of said premises by said administrator and the purchase of the same by said Morrison for the sum of $100, subject to said incumbrances ; and because said Morrison is estopped in law to claim said estate against her dower and homestead, by reason of his having acted as her attorney as aforesaid, and by reason of his having become the purchaser of said premises, subject to said incumbrances.

Wherefore the plaintiff prays that it may be ordered and decreed by this court, that an account may be taken of the amount due on said mortgage, if anything, and that she may be permitted to redeem said dower and homestead from said mortgage, if necessary, by paying such sum, if anything, as this court shall deem just and equitable ; and that the whole of said 18,000 feet, or so much thereof as may be necessary, together with the reversion of the dower and homestead shall be applied to the payment of said mortgage debt before any portion of her dower and homestead be applied in payment of the same ; and that said debt has been wholly satisfied by said 18,000 feet and said reversion.

And the plaintiff further prays for a writ of injunction to restrain said George W. Morrison from prosecuting said suit at law against her, or from otherwise proceeding at law against her touching any of the matters in question, and for such other relief as may be just.

The answer admits that plaintiff is widow of Moses Norris ; that he left children ; that he was seized in his lifetime of the real estate, and that the same was mortgaged to defendant to secure a part of the purchase money of said premises ; that dower and homestead were assigned to the plaintiff (describing each by metes and bounds) ; that he purchased the equity of redemption for one hundred dollars at the administrator's sale ; states the amount due on his mortgage debt, and the amount that has been paid thereon ; denies that he has been in possession of the premises as alleged, or that he acted as counsel, or ever received any compensation for the same as alleged in the bill ; alleges that he has expended large sums in repairs on the buildings and in fencing and in

paying taxes on the part assigned to plaintiff, and that the buildings are wasting; denies that he ever assured plaintiff that she had a home there for life, or any other right except subject to his mortgage; admits he has sued his mortgage; denies plaintiff's right, as claimed, and alleges, that, upon the statements in her bill, she has a plain and adequate remedy at law, and therefore is not entitled to the relief which she here seeks.

*S. N. Bell,* (with him *Clarke & Smith,*) for plaintiff.

This is a bill to redeem certain real estate (a plan of which is annexed,) from mortgage.

The premises were conveyed by the defendant to the late Moses Norris, April 1, 1851, and by him on the same day mortgaged back to secure a part of the purchase money, to wit, $1750, a portion of which has since been paid, to wit, $600, April 1, 1852.

The plaintiff, who is widow of said Moses Norris, had dower and homestead, (with the knowledge and assent of the defendant,) assigned to her by order of the probate court, by metes and bounds, and brings this bill to redeem such dower and homestead from the mortgage, which the defendant now seeks to foreclose. After dower and homestead, had been set off, the administrator of Mr. Norris' estate sold the equity of redemption of said premises, subject to the dower and homestead, for $100 to the defendant; the defendant having also acted as counsel for Mrs. Norris in procuring the assignment of the homestead and dower.

The most of the material facts, excepting, perhaps, the value of the mortgaged premises, are admitted by the answer. And the matters not admitted are made out by the evidence submitted.

The answer, among other things, alleges that the tract, mentioned in the bill, containing 3000 feet, lies between the dower and homestead. An examination of the description of the premises shows this to be an error.

It also sets out certain matters which, if properly proved, might be considered as evidence bearing on the plaintiff's claim of a right to redeem.

It also alleges that the house and buildings set off to the plaintiff are out of repair, the chimney dangerous, the roof leaky, and the whole premises going to waste, but the evidence does not sustain this position, nor does the answer allege nor the evidence show that it is the fault of the plaintiff, or that the premises are now in worse repair than at the decease of Mr. Norris. Nor does it clearly appear that this proceeding is the proper mode to remedy the evil if it exists.

Upon the evidence, the plaintiff is entitled to redeem the premises unless there is some rule of law that will prevent such redemption.

The general rule is, that a widow is entitled to dower of an equity of redemption, *Cass* v. *Martin,* 6 N. H. 25, *Rossiter* v. *Cossit,* 15 N. H. 38, and cases cited; but, as against the mortgagee, she must redeem the whole mortgage, and, as against one having a right to redeem the

mortgage, she must pay her proper contribution, *Hastings* v. *Stevens*, and cases cited, 29 N. H. 564.

The question, whether the plaintiff was entitled to dower and homestead, (see *Norris* v. *Moulton*, 34 N. H. 392,) in these premises, is not now open. The defendant had notice of the proceedings to set off the same, and to a certain extent acted as counsel for her and made no objection to the assignment or the jurisdiction of the court to make it. If he had a right to object it was waived. *Edmunds* v. *Griffin*, 41 N. H. 529 ; *State* v. *Richmond*, 26 N. H. 232, cases cited, page 243. So his taking a deed of the equity subject to the dower and homestead would seem to be conclusive.

When the equity of redemption has been sold or purchased by a third person who has redeemed, the widow is then entitled to have her dower on contributing her proportion, *Woods* v. *Wallace*, 30 N. H. 384 ; and the reason is given—"It would be idle to hold that the defendant was entitled to receive the whole amount of the mortgage before the complainant could be let in upon her dower estate, for if she should pay the amount of the mortgage she would clearly be entitled to the whole premises until contribution should be made by the defendant. *Swaine* v. *Perine*, 5 Johns. Ch. 482 ; *Carll* v. *Butman*, 7 Greenl. 102 ; *Robinson* v. *Leavitt*, 7 N. H. 74. The estate of each in the land was liable for the whole mortgage debt.

He could avail himself of the equity of redemption purchased by him at the administrator's sale in no other way than by contributing his fair proportion of the mortgaged debt. *Taylor* v. *Bassett*, 3 N. H. 294. Why, then, should she be driven to the idle ceremony of paying the whole mortgage, thereby giving the defendant the right to regain his interest by refunding to her his share ? Such a course is not required, nor is it in accordance with well settled decisions in like cases." *Woods* v. *Wallace*, *ante*. And the rule, as well as the reason for it, applies with equal force when the purchaser of the equity is the mortgagee.

If the plaintiff be required to contribute her fair proportion of the mortgage, the question arises, What is her proportion? If the equities of the parties are equal, it is to be borne according to the relative value of the proportion of property held by each, *Salem* v. *Edgerly*, 33 N. H. 46. Nor can one of such parties, by obtaining an assignment of the mortgage, compel the other to pay more than his ratable proportion of the debt, *Aiken* v. *Gale*, 37 N. H. 501. Nor should the holder of the mortgage, by purchase of the equity, have the right to compel any other party interested to pay more than his fair proportion. If the rights of the parties do not stand on the same ground of equity, the premises are to be applied in satisfaction of the mortgage in the reverse order of their alienation. *Brown* v. *Simons*, Hills. Co. Dec. Term, 1862, and cases cited. The 18,000 feet and the reversion, being the premises last sold, should be first applied to pay the debt, and, at the time of such sale, were ample to satisfy the whole amount due.

The sale of the equity to the defendant was in fact a redemption of the mortgage, and payment of the sum due to the mortgagee by the administrator, it was an extinguishment of so much of the plaintiff's debt

as shall bear the same proportion to the whole debt as the value of that portion bears to the whole estate.   It is the duty of the purchaser of an equity to redeem the mortgage.   "If he holds the mortgage it should be considered as extinguished to that extent."   *Woods* v. *Wallace, ante.*

If the value of the part sold to the defendant, subject to the dower and homestead, is equal to the whole amount of his debt, then his whole debt is extinguished.

The defendant, having purchased subject to the dower and homestead, is estopped to deny that the premises at that time were not worth the amount he paid, unless he show fraud in the sale; and being worth not only the whole amount then due on the mortgage, but also $100 in addition, his debt is extinguished, and he has no right to call on the plaintiff for the mortgage debt, nor for contribution, and, in estimating the value of the property and the amount due on the debt, it should be reckoned as of the time of the sale of the equity.

The evidence shows, that, at the date of the sale of the equity, June 2, 1858, the amount due on the mortgage debt, deducting the payment of $600 made April 1, 1852, was less than $1800

| | |
|---|---|
| The value of the 18,000 feet at least | $1800 |
| And of the house and 7500 feet including the life estate at least $1000, deducting the value of the life estate according to the tables, say $250, leaving the reversion, | $750 |
| | $2550 |

to pay the debt of less than $1800, or even at the present time, adding the interest and all taxes and repairs, and excluding matters claimed by the defendant not proper to be allowed as part of the redemption, the amount now due would not exceed $2450.   If there should be any doubt that the 18,000 feet and the reversion at the time of the sale were sufficient to satisfy the mortgage, it may be necessary to refer the cause to a master to determine the amount due the defendant, and the value of the property and what, if anything, the plaintiff must contribute.

Upon the facts appearing in the case, the defendant is estopped to claim the estate against the plaintiff's dower and homestead.

*Morrison & Stanley,* for defendant.

1.   It appears by the bill and answer that the premises were conveyed to Moses Norris by defendant, April 1, 1851, and that said Norris on the same day conveyed the same to the defendant by mortgage deed to secure a portion of the purchase money, which mortgage is still subsisting, and that a suit at law is now pending for the foreclosure of said mortgage.

2.   That, prior to June, 1858, dower and homestead were set off to the plaintiff by metes and bonds.   It is alleged in plaintiff's bill, and

denied by defendant, that he acted as plaintiff's counsel in procuring the dower and homestead set off.

3. The defendant purchased equity and reversion for the nominal sum of $100, June 2, 1858.

4. That the premises consist of a lot restricted to one single dwelling house, and that the restriction expires by its own limitation in the year 1866.

5. It is not claimed and does not appear that the plaintiff has paid or offered to pay any interest on or any part of the mortgage note.

It is apparent that there is a mistake in copying the answer in reference to the location of 3000 feet which cannot in any way affect the questions raised by the bill and answer.

It is alleged in the bill that the defendant always assured the plaintiff that she had an estate for life, which the defendant denies.

It is alleged in the answer and admitted by the plaintiff in her evidence that the buildings are going to waste. The same fact is also proved by the evidence of James D. Wells and Wilham McPherson.

It is alleged in the bill and denied in the answer that the defendant has been in possession of the 18,000 feet, taking the rents and profits since June 2, 1858. The plaintiff, in her evidence, does not claim the fact to be so. The testimony of defendant and Levi Caswell appears conclusive upon that point.

1. *Homestead.* Sec. 5 of the act of July 4, 1851, provides that said act shall not impair the lien by mortgage of the vendor for the purchase money, nor any claim arising out of any contract made prior to January 1, 1852.

The court have decided that the mortgage title in this case was and continues paramount to any homestead right; that the homestead attached in favor of the plaintiff against all persons except such as hold under the mortgage; that the right of the mortgagee will remain unaffected by the assignment—the assignment will only give her the right to hold the homestead until proceedings to enforce the paramount right. *Norris* v. *Moulton*, 34 N. H. 399.

The defendant's mortgage was given before the first day of January, 1852, to secure a portion of the purchase money for the premises in question and contains the usual covenants of warranty. The defendant claims that the plaintiff is estopped by said deed of mortgage to prosecute this bill to invalidate or affect the title conveyed thereby. *Foss* v. *Strachn*, 42 N. H. 40; *Strachn* v. *Foss*, 42 N. H. 44, and cases there cited; Washburn on Real Property, Vol. 1, 151, chap. 7, sec. 8.

If a purchaser of land conveys it in mortgage at the same time he acquires a title, and as a part of the same transaction, he acquires no right of homestead therein as against the mortgage. *New England Jewelry Co.* v. *Tarrant Merriam*, 2 Allen, 390; *Lassen* v. *Vance*, 8 Cal. 271, (U. S. Digest, 19, 352); *Montgomery* v. *Tutt*, 11 Cal. 190, (U. S. Digest, 20, 474.)

2. *Dower.* The plaintiff, to entitle her to dower as against the de-

fendant's mortgage, must first redeem the whole mortgage, and charges for repairs, taxes, &c.,paid out by the mortgagee. *Hastings* v. *Stevens,* 29 N. H. 564; *Rossiter* v. *Cossitt,* 15 N. H. 38; *Clough* v. *Elliott,* 23 N. H. 182; *Brown* v. *Lapham,* 3 Cush. 554; *McCabe* v. *Bellows,* 7 Gray, 148; Washburn on Real Property, Vol. 1, 246 & 7.

The purchase of the equity and reversion by defendant was made after the decision in the case of *Norris* v. *Moulton,* with the understanding that such purchase would not affect the rights of the defendant under the mortgage, and did not in any way operate to the prejudice of the plaintiff or affect the rights of the defendant under his mortgage. *Company* v. *Merriam,* 2 Allen, 390; *Snyder* v. *Snyder,* 6 Mich. 470; Washburn on Real Property, 183 & 4, chap. 7, secs. 20, 21 & 22; pages 246 & 7, chap. 7, sec. 25; page 355; also, pages 182, 80, 354, 564 & 565; also, Vol. 2, page 394; Hibbard on Mortgages, 1, 343, chap. 17, sec. 8.

Neither did said purchase operate in law as payment of said mortgage debt or any part thereof.   See authorities above cited; also, *Hutchins* v. *Carleton,* 19 N. H. 487; *Bell* v. *Woodward,* 34 N. H. 90; *Porter* v. *Millet,* 9 Mass. 101; *Van Deusen* v. *Frink,* 15 Pick. 449; *Spencer* v. *Ayrault,* 6 Selden, 202; *Hubbard* v. *Ascutney,* &c., 20 Vt. 402; *Spring* v. *Haines,* 8 Shepl. 126; Hilliard on Mortgages, 1, pages 314, 315, 330 & 331.

The law in reference to the proportion each party is liable to pay for a redemption applies only when all parties hold under a like title. *Aiken* v. *Gale,* 37 N. H. 501; *Salem* v. *Edgerly,* 33 N. H. 46.

There is no question, that, when a mortgage is held by an assignee who has purchased the equity, the widow is entitled to dower by contributing her proportion, but we can find no case where it has been held to be the law against a mortgagee.

The mortgagee has the right to insist on the payment of the mortgage debt, and then elect whether he will *refund his share or retain the money and abandon his claim upon the land under his mortgage.*

The plaintiff alleges in the bill that defendant acted as her counsel in procuring the assignment of her dower and homestead, and while the appeal was pending (in 1856) always assured her that she had an estate for life.   Both of said allegations are denied by the defendant in his answer.

In plaintiff's evidence she does not pretend that she ever employed the defendant, as counsel, ever paid him anything for services or money paid out, but says the defendant was present when the dower and homestead were set off.   Nor does she claim that the defendant ever said anything about her having an estate for life until four years ago, (1859,) three years after that appeal was decided, and two years after the dower and homestead were set off. See answer to the 15th interrogatory.  She further says she never knew that defendant questioned that she had an estate for life.   See direct interrogatory 9th and answer.

The defendant in his evidence denies that he acted as her counsel in the premises, except as stated by him; that he does not and never has

understood that he was acting as such; denies that he was present when dower and homestead were set off, and the report of the committee so shows; also denies that he ever assured her that she had an estate for life, and is corroborated by the evidence of D. W. Fling and C. W. Colby.

The defendant contends that his rights were not in any way affected by the assignment of the dower and homestead, whether he was present assisting or not. That question is fully settled in *Norris* v. *Moulton,* 34 N. H. 399. See also *Bullard* v. *Bowers,* 10 N. H. 500; *Rix* v. *McHenry,* 7 Cal. 89, (U. S. Digest, 19, 352.)

SARGENT, J. The doctrine in this State in relation to dower, is well settled:

1. That a widow is entitled to dower in an equity of redemption in real estate of her late husband, against all persons except the mortgagee or those claiming under him.

2. She cannot be endowed as against the mortgagee, except by payment of the whole mortgage debt.

3. But, as against any one having an interest in the redemption, and who has actually redeemed the mortgage, she can be endowed upon payment of contribution.

4. If the administrator redeems the mortgage from assets of the estate, then the widow takes dower without contribution. *Cass* v. *Martin,* 6 N. H. 25; *Robinson* v. *Bates,* 3 Met. 40, and cases cited: *Robinson* v. *Leavitt,* 7 N. H. 102; *Rossiter* v. *Cossitt,* 15 N. H. 38; *Hastings* v. *Stevens,* 29 N. H. 564; *Woods* v. *Wallace,* 30 N. H. 384.

Similar principles are to be applied in the assignment of homestead; *Norris* v. *Moulton,* 34 N. H. 392, 399, where it is said: "The estate is under the incumbrance of a mortgage given at the time of the purchase to secure the payment of a part of the purchase money. By the provisions of sec. 5 of the homestead act, such lien remains unimpaired by reason of any right under the act. But, although the mortgage lien continues paramount to any homestead right, this constitutes no ground of objection to making assignment of the homestead. The right attaches in favor of the widow as against all persons except such as hold under the mortgage; the estate in this particular is to be treated as though it were free from the incumbrance.

The rights of the mortgagee will, of course, remain unaffected by the assignment. Its operation will be merely to give her the right to hold the homestead assigned to her until proceedings to enforce the paramount right under the mortgage. If the mortgage debt is discharged by the administrator, she then holds her homestead of the value of $500 free from the incumbrance, the appraisal being made as though the estate were unincumbered. If the debt is not paid by the administrator, she will have the right to redeem and hold the entire estate under the mortgage as assignee, until such amount be paid to her as, upon principles of law, others interested in the redemption of the mortgage may

be bound to pay; whether that should be the entire mortgage debt or a proportionate part of the debt, it is unnecessary now to determine."

But we see no reason why it may not properly be held to stand in this last respect the same as dower; that any party having an interest in the redemption may redeem the mortgage by paying the mortgagee the whole mortgage debt, and then others having also an interest in the redemption may hold that interest discharged of the mortgage by paying contribution.

In this case, the administrator did not redeem the mortgage with assets of the estate, and therefore the widow does not hold her homestead or dower free from contribution. The question is, whether she shall hold these rights now by making contribution, or whether she must pay up the whole of the mortgage debt.

As the case stood when the homestead was assigned to her, she could redeem by paying the whole mortgage debt, and stand as assignee of the mortgage until others interested should pay their legal proportion. Since then the equity of redemption has been sold, and the purchaser of the equity, if he had been some third person and not the mortgagee, would thereby have acquired an interest in the redemption, and he could have redeemed from the mortgage debt by paying the whole amount due to the mortgagee, and he would have stood as assignee of the mortgage until this plaintiff had paid him contribution; or, after the equity was sold, this plaintiff might have paid off the mortgage and stood as assignee of the same till the purchaser of the equity had paid her contribution.

We do not see that the defendant stands any differently in this case, upon the evidence, on account of having acted as counsel for the plaintiff in the assignment of her dower and homestead, so far as he thus acted, from what he would otherwise have stood. We cannot see that he is estopped to claim any right, which he might otherwise claim, by his having acted as her counsel in that behalf.

But what is the effect where the mortgagee buys in the equity of redemption, as in this case, and thus stands in the double capacity of mortgagee and owner of the equity? Shall he be allowed to stand in these capacities separately, and to elect in which he will act at a given time, and act first in one capacity and then in the other as best suits his interests or his caprice? We have seen, that, when the owner of the equity purchases in the mortgage of the mortgagee, and thus unites the two titles, the widow is entitled to dower and homestead by paying contribution only. Shall the same rule apply, or a different one, where the same interests are united in the same person and where the only difference is, that he was the mortgagee first, in the one case, and afterwards purchased the equity, and, in the other case, he first had the equity and afterwards purchased the mortgage? We see no good reason for any distinction.

In fact that question has been settled in *Woods* v. *Wallace*, 30 N. H. 384. That case was precisely like this, except that there the defendant first bought the mortgage and the note secured by it, and had them assigned to him by the mortgagee while the mortgagor was alive.

Afterwards the mortgagor died and the equity was sold and purchased in by the assignee of the mortgage, and the widow then claimed her dower, and it was held that the assignee of the mortgage under these circumstances stood precisely like the original mortgagee having all his interests and rights, and that neither the widow nor the purchaser of the equity, had he been some third person, could redeem the mortgage of such assignee, without paying the whole amount of the mortgage debt; but that, when such assignee purchased in the equity and thus united the two interests in himself, they became merged and united, and that in such case the widow was entitled to dower upon contribution. In principle, then, that case was precisely like the present, as the assignee of the mortgage in that case at the time of the death of the mortgagor, stood in all respects like the original mortgagee; and, unless the law of that case is to be overruled, this plaintiff is entitled to dower and homestead in the case before us, upon contributing her just share of the mortgage debt.

But the law of *Woods* v. *Wallace* seems to us to be consistent upon principle, as well as being in conformity with the other decisions in this State upon that subject. *Woods*, *J.*, in delivering the opinion in that case, asks why the plaintiff should be driven to the idle ceremony of paying the whole mortgage, thereby giving the defendant the right to regain his interest in the premises by refunding to her his share; and it was held that such a course was not required. It was also said that the purchase of the equity of redemption may well be considered as an extinguishment of so much of the mortgage debt as should bear the same proportion to the whole debt secured by the mortgage, as the value of that interest in the premises bears to the whole estate.

But it is claimed that in this case the parties do not stand on the same ground in equity, but that the premises are to be applied in satisfaction of the mortgage in the reverse order of their alienation, and that the reversion and the 18,000 feet of land mortgaged, which were left after the dower and homestead were set off, having been last sold, must be applied first in reduction of the mortgage debt, or in discharge of the same, if of sufficient value, before the holder of the dower and homestead can be called on for contribution, and it is claimed that *Brown* v. *Simons*, 44 N. H. 475, authorizes such application. But a careful examination of the principle of that case will show that there is no foundation for that claim. It was there held that where a mortgagor sells a portion of the land in different parcels and at different times, that which he retains will in equity be held primarily liable for the whole debt; and, if not sufficient, the several parcels sold will be liable in the inverse order of such sales beginning with the parcel last sold, &c. But the sales here referred to are the sales from the mortgagor of the premises mortgaged. Sales by the grantees of the mortgagor would have nothing to do with the question; whether they were earlier or later, the one than the other, would make no difference.

In the case before us, while the mortgagor lived, he held the whole title subject to the mortgage, and it was only at his death that the rights were severed. The right of dower and of homestead vested in the wid-

ow at his decease, and the equity of redemption subject to dower and homestead vested at the same time in his creditors or in his administrator for their benefit and in trust for them.   Both estates thus commenced or were derived from the mortgagor at the same time, to wit, the time of his decease; and a subsequent sale of one right by the administrator or a set-off of the dower and homestead, or a sale of such rights, if a sale of the homestead could be made, would have no bearing on the question.

If, because the dower and homestead were first set off and the sale of the equity was made afterwards as in this case, the whole value of the equity sold is to be applied to reduce or discharge the mortgage debt before the plaintiff is called on for contribution, then it would follow, that, if the order of the sale and set-off were reversed, the rule would apply with equal force.   Thus, suppose the sale of the equity to be made first and the set-off of dower and homestead to be made afterwards, then, by the same rule, the whole of the dower and homestead are to be applied to reduce or discharge the mortgage debt before the purchaser of the equity of redemption be called on for contribution, which would simply be stating an absurdity.

The rights of both parties, having vested at the same time from the mortgagor,—the equity of redemption on the one side, and the right of dower and of homestead on the other,—the equities of the parties are equal, and the mortgage debt is to be paid by them according to the relative value of the proportion of mortgaged property held by each. *Salem* v. *Edgerly*, 33 N. H. 46; *Aiken* v. *Gale*, 37 N. H. 501.

A master will be appointed to ascertain the relative value of the estate of the plaintiff in the mortgaged premises as compared with the estate of the defendant in the same premises, at the time of the sale of the equity of redemption; and the proportion of the mortgage debt for each to pay, as of that date, will be according to the value of their several interests in the mortgaged premises.   And when that is ascertained and the amount, which the plaintiff should pay, as of that date, is determined, the plaintiff will have a decree that she hold her dower and homestead free from any incumbrance in consequence of the mortgage, upon paying into court the amount thus due from her at the date of the sale of the equity with interest thereon since that time.   And thereupon the suit upon the mortgage will be discharged.   If she does not thus pay the money into court and have a decree, the mortgagee will be allowed to take a conditional judgment in his suit upon the mortgage, for the amount thus found due from this plaintiff at the time of the sale of the equity, with interest from that time.

If any question arises concerning the payment of the taxes on the premises mortgaged or the different parts thereof, or concerning the repairs done upon any part of the premises since the sale of the equity of redemption, which is deemed material as affecting the final decree, the master will report the facts bearing upon such question.

*Master appointed.*